```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
WAFIK NAWAF ALTAWEL, d/b/a LITTLE
BROOKLYN MINI MARKET,

                      PlaintiffS,            12-CV-6708
              v.                             DECISION AND
                                             ORDER
UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF
AGRICULTURE FOOD AND NUTRITION SERVICE,
BENEFIT REDEMPTION DIVISION.

                      Defendants,
_____
```

## INTRODUCTION

In this action, plaintiff Little Brooklyn Mini Market ("Brooklyn Mini Market") and its owner Wafik Nawaf Altawel ("Altawel") challenges an administrative decision of the United States Department of Agriculture ("USDA"), Field and Nutrition Services ("FNS"), which permanently disqualifies Brooklyn Mini Market from participating in the Supplemental Nutrition Assistance Program ("SNAP").

The Government has moved for summary judgment, contending that the FNS's decision to disqualify Brooklyn Mini Market from the SNAP program was mandated by, and consistent with, the relevant regulations and, in any event, was not arbitrary and capricious. For the reasons stated below, the Government's motion for summary judgment is denied.

## BACKGROUND

Brooklyn Mini Market is a small grocery store located at 848 Joseph Avenue in Rochester, New York. The FNS is an

administrative agency of the United States that administers SNAP under the Food and Nutrition Act of 2008 (the "Act"). 7 U.S.C. § 2011 et seq.; see also 7 C.F.R. § 271.3. Brooklyn Mini Market applied to be a SNAP retailer in 2006, but was permanently disqualified from participation in the program on October 3, 2012.

The USDA monitors every SNAP electronic benefit card ("EBT") transaction in a national database. The date, time, and amount of each transaction is recorded. FNS uses a "computerized fraud detection tool" called ALERT to identify statistically unusual EBT transaction patterns that may indicate SNAP violations. Statistical anomalies that may be identified by Alert reports include high frequencies of sale totals in whole-dollar and half-dollar amounts.

In May 2012, Brooklyn Mini Market's SNAP redemptions totaled 14,589.00, a five-percent increase from its prior monthly average. Brooklyn Mini Market's June 2012 SNAP redemptions increased to $17,344.00, an 18 percent increase from May. In July 2012, the SNAP redemptions dropped down to $15,164.00.

Robert Hughes ("Hughes"), an FNS program specialist in charge of the Northeast Compliance Center South, reviewed the national database records for food stamp transactions conducted by Brooklyn Mini Market in May, June, and July of 2012. He discovered three patterns of unusual activity within three months. As examples, 479 food stamps sales greater than $9.00 ended in whole-dollar amounts, and 170 food stamp sales greater than $9.00 ended in half-

dollar amounts. These 649 transactions "occurred 46% of the time[,] well beyond the typical frequency found in the national database," according to Hughes. The other patterns of suspect activity in May, June, and July included an unusually high number of SNAP transactions within short time frames, frequently by the same SNAP beneficiary household, and frequent high-dollar SNAP transactions relative to the type and price of items stocked by Brooklyn Mini Market.

Hughes also reviewed a "site-visit report," dated August 6, 2012, which stated that Brooklyn Mini Market was a 4000-square-foot convenience store with two aisles devoted to candy, tobacco products, and hot foods. The store had one cash register, one EBT processing device, no shopping carts or hand baskets, and minimal counter space. Located within a mile of Brooklyn Mini Market are two supermarkets, two medium-sized grocery stores, and 15 small stores. On August 29, 2012, Hughes issued an FNS charge letter to Altawel, advising him that Brooklyn Mini Market was being charged with trafficking food stamps. Thereafter, the SNAP redemptions at Brooklyn Mini Market dropped by 30 percent from August 2012 to September 2012.

In response to Hughes's August 29 letter, Altawel, owner of Brooklyn Mini Market for 14 years, denied the Government's allegations. He countered that Brooklyn Mini Market's products are priced with "even" or "whole" numbers because the amounts are easier to calculate and avoid the necessity to give change. The

store sells a variety of products, including meat, baby formula, and household goods, among other things. Customers commonly return to the store later the same day because they have family members or children who have forgotten something or desire an additional item. Brooklyn Mini Market is operated in an economically-distressed Rochester neighborhood; most of the customers live nearby and do not own motor vehicles. Large transactions frequently occur in the first two weeks of the month because food stamp beneficiaries receive their SNAP distributions during that period. Families wait until the benefits are received, and they tend to purchase large quantities of groceries. A month's supply of infant formula alone can cost up to $150.00.

Altawel submitted two customer affidavits and an employee affidavit that support the contentions contained his response letter. Altawel also submitted a letter signed by a number of Brooklyn Mini Market customers (names redacted in the record) in which they stated that food stamps are received in the first two weeks of the month and that families will make their major monthly grocery purchases at that time.

In its Final Agency Decision, USDA found that there was sufficient evidence to support Brooklyn Mini Market's permanent disqualification from participating in SNAP. USDA noted that there were "three patterns of EBT transaction characteristics indicative of trafficking: (1) "an unusual number of transactions ending in same cents value"; (2) multiple withdrawals made from individual

benefit accounts in an unusually short time; and (3) excessively large purchase transactions made from SNAP recipient accounts. Agency decision, p. 3. USDA further found that Altawel's explanations for the transactions did not "provide the clarity or justification needed to constitute valid grounds for" eliminating or mitigating the trafficking charges against Brooklyn Mini Market. Agency decision, p. 9.

**DISCUSSION**

**I.   Standard for Summary Judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). Once the movant has met this burden, the burden shifts to the nonmovant who must "come forward with evidence to allow a reasonable jury to find in his favor." *See Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir.2001); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325–27 (1986). The court must draw all factual inferences, and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp.,* 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if

there is a 'genuine' dispute as to those facts." *See Scott v. Harris*, 550 U.S. 372 (2007).

**II. Review of the FNS determination**.

A SNAP store aggrieved by a final administrative action of FNS, may obtain judicial review of the agency decision. *See* 7 U.S.C. § 2023(a)(13). Where a plaintiff store concedes that the violations took place, the district court may overturn the penalty only if its imposition was arbitrary or capricious. *See Lawrence v. United States*, 693 F.2d 274, 276 (2nd Cir. 1982). However, if a plaintiff disputes FNS's finding that it violated program regulations, the Food Stamp Act provides that a district court review the matter *de novo* to "determine the validity of the questioned administrative action." *Yafaie v. United States*, 1995 WL 422169, at *1 (S.D.N.Y. 1995), citing 7 U.S.C. § 2023(a)(15); *Sims v. U.S. Dep't of Agric. Food & Nutrition Serv.*, 860 F.2d 858, 862-63 (8th Cir. 1988); *Guzman v. U.S. Dep't of Agric. Food & Nutrition Serv.*, 931 F.Supp.2d 488, (S.D.N.Y 2013).

7 C.F.R. § 278.6 (e)(1) provides, in pertinent part, that FNS shall disqualify a SNAP retailer permanently if personnel of the retailer have trafficked SNAP benefits. Trafficking is defined as, among other things, buying or selling SNAP benefits for cash or consideration other than eligible food. *See* C.F.R. § 271.2.

Here, Brooklyn Mini Market disputes that it engaged in any SNAP benefits trafficking. The store contends that the evidence consists solely of the statistical analysis of three months of

transactions by a nonqualified expert. Brooklyn Mini Market further contends that, insofar as FNS has not compared its transactions to a baseline of expected transaction activity, the significance of any alleged deviations cannot be sufficiently assessed. The Government contends that it is entitled to summary judgment because Brooklyn Mini Market fails to demonstrate a genuine issue of fact concerning the legitimacy of its abnormal EBT transaction patterns.

There is no question that the FNS is entitled "'to consider evidence obtained through transactions reports under an electronic benefit system' in disqualifying food stores for food stamp trafficking." *Idias v. United States*, 359 F.3d 695, 698 (4th Cir. 2004), quoting 7 U.S.C. § 2021(a); *see also* 7 C.F.R. 278.6(a). All of the unusual patterns of EBT transactions at Brooklyn Mini Market during the relevant period are arguably "suspicious," possibly indicating, as the Government asserts, "that it was more likely than not that trafficking was taking place." Def. motion, p. 12, 14.

However, viewing the evidence here in a light most favorable to the nonmoving party, this Court finds that there is a genuine dispute as to whether the EBT transaction activity of Brooklyn Mini Market is abnormal. According to the Government, Brooklyn Mini Market's May 2012 SNAP redemptions were $14,589.00, an increase of five percent, or $2,513.00, over its prior monthly average redemptions. In June 2012, the SNAP redemption total had increased by another $2,755.00 to $17,344.00. In July 2012, however, the SNAP

redemptions dropped by $2,180.00 to $15,164.00. In addition, while asserting the Brooklyn Mini Market's even dollar transactions were excessive, the Government acknowledges that "the majority of transactions occurring at [Brooklyn Mini Market] during the investigation period . . . did *not* end in an even dollar amount." Def. motion, p. 13. Without providing the basis for its belief that Brooklyn Mini Market's food stamp redemption rate and even dollar transactions were excessive, the EBT transaction data and store visit notwithstanding, a reasonable finder of fact could return a verdict for Brooklyn Mini Market on this question. *See generally Anderson*, 477 U.S. at 248; *compare Rodriguez Grocery & Deli v. U.S. Dep't of Agric. Food and Nutrition Serv.*, 2011 WL 1838290, at *4 (D.Md. 2011) (disqualified store's SNAP redemption rate was excessive as compared to a local, similarly-situated grocery store).

Where other courts have decided in the Government's favor, the EBT transaction data of the disqualified store was found to be abnormal as compared to the transaction activity of like SNAP retailers, or other compelling circumstances were found, or both. *See Idias*, 359 F.3d at 697 (among other evidence, EBT debits exceeded store's gross sales on several occasions); *109 Merrick Deli Corp. v United States*, 2014 WL 6891944, at *2 (E.D.N.Y. 2014) (EBT data was compared to similarly-situated stores in the locale); *African Grocery Store v. United States*, at *5 (E.D.Mo. 2008) (repetitive pattern of unreasonable and inexplicable food stamp

activity was compared to other similar, authorized grocery stores); *Kahin v United States*, 101 F.Supp.2d 1299, 1300-1301 (S.D.Cal. 2000) (food stamp redemptions for four months were compared to store's total projected annual food sales); *cf. McClain's Market v. United States*, 214 F.App'x 502, 505 (6th Cir. 2006) (disqualified store offered no evidence to explain the volume, frequency, or size of the transactions identified by the government).

The Government's proof here contains the statistical analysis of electronic transaction records, but fails to compare Brooklyn Mini Market's data to the standard activity of similarly-situated local grocers, and, therefore, fails to establish Brooklyn Mini Market's deviations from such a standard. Consequently, the Government has not met its burden of showing that it is entitled to judgment as a matter of law.

## CONCLUSION

In light of the facts in this record, summary judgment is denied. I find that there exists a genuine dispute as to material questions of fact concerning the reliability and sufficiency of the evidence relied upon by the Government in permanently disqualifying plaintiff from participating in the Supplemental Nutrition Assistance Program.

**ALL OF THE ABOVE IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　s/ Michael A. Telesca
　　　　　　　　　　　　　　　　　　MICHAEL A. TELESCA
　　　　　　　　　　　　　　　　　　United States District Judge

Dated:    Rochester, New York
          December 18, 2014